**UNITED STATES OF AMERICA**

**v.**                                   **Case No. 8:26-CR-42-JLB-CPT**

**BENJAMIN ACKERMAN**

_____/

## MOTION TO COMPEL IDENTITY OF CONFIDENTIAL SOURCE AND CORRESPONDING LAW ENFORCEMENT AGREEMENTS AND DOCUMENTS RELATED TO CONFIDENTIAL SOURCE

COMES NOW, the Defendant, BENJAMIN ACKERMAN, through undersigned counsel, moves this Court to compel the Government to provide in discovery the identity of the confidential source (CS) used in the instant case, any agreement between law enforcement and said CS, and all documents and files maintained by law enforcement on the CS.

## FACTS

On 9 January 2026, the government applied for a search warrant in order to have officers and agents search the "target location." That target location is a mobile home[1] parked behind the home at 1014 27th Street East, Bradenton, Florida. The below photo is part of Attachment A to the Search Warrant Application.

---

[1] The mobile home itself does not have a physical address that receives mail.



That mobile home is located behind the residence shown below:



Special Agent Ryan Brothers of the Drug Enforcement Administration attests to the

information found in the search warrant application. In part, SA Brothers states that

he conducted a "debrief of a DEA confidential source ("CS1")" in November 2025.

SA Brothers notes that CS1 is "currently working with law enforcement for monetary compensation" and that CS1 has a "prior felony conviction for providing a false name . . . ." SA Brothers further states that even though the conviction against CS1 is a crime of dishonesty, he believes CS1 to be truthful about "drug trafficking." *See* Ex. A, Warrant Application. In the state of Florida, the crime of giving a false name to law enforcement is typically a first degree misdemeanor punishable only by one year in jail. *See* F.S. 901.36(1). However, the crime of false name to law enforcement becomes a felony when that false information adversely affects another person. *See* F.S. 901.36(2).

It is that same CS—CS1—who tells law enforcement that she is able to purchase cocaine from Mr. Ackerman. As a result, CS1 sets up a series of buys with individuals—but, notably, Mr. Ackerman never engages in a hand-to-hand transaction with CS1.

On 8 December 2025, CS1 tells law enforcement that she sent a text message to Mr. Ackerman's alleged telephone stating "I need to grab something."[2] Mr. Ackerman's alleged response is "I'm in Bradenton." CS1 then meets with agents, agents equip her with audio and video surveillance and provide her with $700. CS1 drives to the house located at 1014 East 27th Street, Bradenton. When she gets there,

---

[2] The phone is alleged to belong to Mr. Ackerman based on an agent's familiarity with his voice and a positive identification by CS1.

CS1 calls "Ackerman's" telephone. A woman named Phyllis Baker[3] walks up to CS1's car and allegedly gives CS1 drugs. That day, CS1 ultimately tell agents that Ms. Baker exited from the target location. This cannot be seen on the video surveillance.

A week later, on 15 December 2025, agents tell CS1 to set up another controlled buy with Mr. Ackerman at the Target Location. Agents again equip CS1 with audio/video surveillance and give her $300. CS1 allegedly calls Mr. Ackerman and Mr. Ackerman tells her he will meet her at the Target Location. At that location, CS1 says that Mr. Ackerman met with her and discussed the amount of drugs she needed. After having this conversation with Mr. Ackerman, CS1 says another female (unidentified by CS1) came out of the mobile home and gave CS1 narcotics. However, none of the conversations or transactions are recorded via audio or video. Agents later discover that the devices were not working at the time. As a result, there is no video or audio evidence that CS1 ever engaged in a drug transaction with Mr. Ackerman. The evidence proposed by SA Brothers in the affidavit is limited solely to CS1's "word."

On 9 January 2026, after applying for a search warrant, Magistrate Judge Sansone approves the warrant. On 12 January 2026, a DEA Task Force executed a federal search warrant on the camper located in the rear of the physical address of

[3]

1014 East 27th Street, Bradenton, Florida. During this search, law enforcement located suspected narcotics. Despite being one of two residents in the house at the time, Mr. Ackerman is arrested and transported to jail.

### LEGAL ARGUMENT

Under Roviaro v. United States, the government has a limited privilege to withhold the identity of law enforcement informants prior to trial. 353 U.S. 53, 59 (1957). The purpose of this privilege "is the furtherance and protection of the public interest in effective law enforcement." *Id.* However, the Court may require disclosure where the informant's identity or the contents of her communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause. *Id.* at 60-61.

Overlaying this standard is the government's obligation under *Brady v. Maryland*. 373 U.S. 83 (1963). A defendant is entitled to evidence "favorable to an accused" that "is material either to guilt or to punishment." *Id.* at 87. Evidence is "favorable to the accused" under *Brady* when it is "exculpatory." *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) (citations omitted). Evidence is "material" under *Brady* "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009). Moreover, the Federal Rules themselves guarantee a defendant's right to papers, documents, and tangible objects "if the item is within the government's

possession, custody, or control," and "the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i).

In balancing both parties' interests, the Court must consider "the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony." *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991) (citing *Roviaro*).

While the burden is on the defense to establish the necessity of the disclosure, here, the defense believes it can satisfy that burden. In the instant case, the identity of CS1 and the agreement between CS1 and law enforcement is integral to the defense's case. Already, within the warrant application, the government attests to two facts which are concerning: first, that CS1 is receiving monetary compensation and, second, that CS1 has a prior felony crime of dishonesty that affected another person. The defense will address each issue in turn.

First, CS1 benefits financially from information she gives to agents about Mr. Ackerman. The defense does not know the amount, the frequency of payment, or any particulars. Moreover, the defense does not know how long CS1 has been supporting herself by giving information about other individuals to law enforcement. And, the agent does little to clear these issues up. He states only that she is "currently working with law enforcement for monetary compensation."

Second, CS1 has at least one prior felony conviction for dishonestly. The

agent does not provide any details about this crime or, generally, CS1's prior criminal history. The defense only knows that the conviction is a felony—somewhat rare for a charge of "false name." The defense does not know the specific facts, what other people were inculpated as a result of CS1's crime, or how it was resolved save for being convicted. Moreover, defense does not know what other prior criminal history CS1 has. Specifically, defense does not know if Mr. Ackerman or members of his family were targets of CS1 from other cases; in other words, does CS1 have a reason to have a vendetta against Mr. Ackerman?

Finally, given these two facts, the government does nothing to assure the Court of the reliability of CS1, save for a generalized statement that the agent believes CS1 to be reliable. While these issues, in part, go to the validity of the warrant, they also demonstrate to this Court why information about CS1 is needed. Without determining who CS1 is, her prior record, and her CS file, including payments, the defense will be unable to vigorously advocate for Mr. Ackerman.

However, even if the government convinces this Court that disclosure of CS1's identity—that is, her full, legal name—is unnecessary, the facts underlying the warrant application demonstrate the necessity of the defense having access to CS1's full criminal history, informant file and agreement, and records of payment between CS1 and law enforcement. These items can all be provided to the defense without release of CS1's legal name. And, those pieces of evidence are relevant and

necessary to defense's future legal argument about the validity of the search warrant.

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE**

In accordance with this Court's pretrial order, defense counsel hereby certifies that counsel for the parties have been unable to resolve their differences or reach an agreement after holding a conference.

DATED this 20th day of April 2026.

Respectfully submitted,

CHARLES L. PRITCHARD
FEDERAL DEFENDER

***/s/ Jessica Casciola***
JessicaCasciola
Assistant Federal Defender
Florida Bar No. 40829
400 North Tampa Street, Suite 2700
Tampa, FL. 33602
Telephone: 813-228-2715
Fax: 813-228-2562
Email: Jessica_Casciola@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of April 2026, a true and correct copy of the foregoing was furnished by CM/ECF to with the Clerk of the Court, which will send notice of the electronic filing to the following:

Samantha Beckman, AUSA

>                              */s/ Jessica Casciola*
>                              Jessica Casciola
>                              Assistant Federal Defender